John McNichols, Williams & Connolly, representing Eric Blattman, the appellant, arguing for The question on appeal is whether a plaintiff who has proven both breach of contract and harm is required to put in proof of the extent of harm, of damages, on the date of breach to be able to recover, and under Delaware law, the answer to that question is no. As the Delaware Supreme Court has stated in the case of Sega Technologies v. Pharmathene in 2015, when a contract is breached, expectation damages can be established as long as the plaintiff can prove the fact of damages with reasonable certainty. The amount of damages can be an estimate. In this case, there is no dispute as to the fact of injury. Everyone agrees that the holdback shares the plaintiffs have sued over had great value, and as we noted in our briefs, the district court even observed on the record during closing arguments, that they're worth a lot more than $4 million now. So this is not the case of a breach that resulted in no harm. Nevertheless, despite finding that C3 had breached the contract, and that the shares had value, the district court entered judgment for the defendant, C3, as a matter of law, because the plaintiffs did not put in evidence of how much the holdback shares were worth on the date they should have been paid out. Because that's error, this court must reverse. This case arises from the merger of two software companies, one named C3, which is the defendant, and the other named Efficiency 2.0, which was the acquired entity, and my clients, the plaintiffs, were shareholders in the acquired entity. Because it was a stock for stock merger, the shareholders of Efficiency 2.0 were paid in shares of the parent, C3, and there were three possible tranches of shares that they could get under the merger agreement that they agreed to in May of 2012. Mr. Nichols, why wouldn't your damages be an award of shares? This $3.33 figure, I think the record is clear, was a plug number. It was arbitrary to some extent, right? So why wouldn't your award of damages for breach of contract be shares? Certainly, had we sought specific performance, Your Honor, I think we would be entitled to a distribution of shares, having shown a breach, as we did in this case. My understanding, though, is that money damages are the default or ordinary remedy in contract cases, and that in order to get equity, in the case of specific performance here, would have had to show something unique about these shares, which is difficult to do in the case of a financial instrument, which equates to some money value. Where in the trial record did you put in evidence of monetary damages on the breach of contract claim? Clearly, you did so for the fraud claim, but I didn't readily see it on the breach of contract claim. Right. The evidence of the value of shares, Your Honor, I think is best stated in the contract itself. And in this vein, I note that you can always look to the conduct of the party in breach to see what value it assigned to the consideration. Under the merger agreement, C3 agreed that it would retain 1.2 million shares as the holdback to offset $4 million in indemnifiable expenses. Now, if those 1.2 million holdback shares were not actually worth $4 million, then C3 agreed to a fool's bargain, despite having the best information as to the value of its own shares. I can only submit that based on that agreement, C3's willingness to keep 1.2 million in exchange for a $4 million offset is the best evidence of the value of those shares. That's right out of C3's own agreement and what it put in the contract. Where did you argue that in the trial record? I'm sorry, go ahead. No, go ahead, Judge Shurka. Is it accurate to say that on the holdback damages, you did not raise the value of 1.72 or 0.44, which was the price of the shares that were sold by Mr. Scarmolino? No, I don't think it's accurate with respect to the 1.72. You had an expert who testified as to the value on that. We testified that 1.72 was the value at closing, and then we argued to the court that that value could be carried over to 18 months later at the point at which the holdback shares should have been paid out, given the testimony of the CEO of C3, who said that the company's financial performance had improved over that period of time. Anyway, on this point, Your Honor, I want to emphasize that the number of shares of the holdback at $1.2 million at the stated amount of $4 million represented bargaining by C3 in that the initial amount of the holdback stated in the term sheet was $2 million, but they asked to have it raised or doubled during the course of the negotiations for additional security. And the way it worked, as I hope we've made clear in the briefing, was that if there was a breach of warranty by Efficiency 2.0 that resulted in some costs to C3 that were our fault, in other words, as a result of a breach of warranty or representation, that C3 was entitled to deduct its costs, its indemnifiable expenses, from that $4 million amount on a dollar-for-dollar basis, representing hard dollar costs. That claim was made in bad faith, though. Their indemnification claim was made to us in bad faith. That's correct, Your Honor. And the district court rejected that claim in total. That's right. So, in other words, the district court's finding was that C3's indemnification claim was made in bad faith to us and that all $1.2 million of those shares should have been paid out to the E2O shareholders. The only question there is, after that, what was the value of those shares? And then he, despite finding that C3 had breached the contract in bad faith, entered judgment for C3 simply because we did not put in evidence, valuation evidence, on the date at which they would otherwise have been delivered. And wasn't that your burden to prove damages as of the date of breach? The date of breach is the proper measure of damages, Your Honor. And we do bear the burden to prove the fact of damages. But under Delaware law, once the fact of damages is established, if there's uncertainty as to amount, it's the defendant, in this case C3, that pays the price for that uncertainty under the wrongdoing rule. That's black letter law, section 352 of the restatement, Pennsylvania, New Jersey, Delaware, that if there's uncertainty as to the precise quantum, that goes against the defendant, in this case C3. At any time, did you request the district court to consider nominal damages? No, Judge Greenberg. Our pleadings do not state a request for nominal damages. And I don't think we mentioned that in our post-trial briefing. And what is the significance of that? I don't think it is significant, Your Honor. The law is that if damages really are indeterminate, in this case, having shown a breach, we should be given an award of nominal damages. The defendants, in this case, have cited some cases in which the failure to request an instruction on the amount of nominal damages in a case that goes to the jury could be grounds to waive the claim. But this wasn't the case that went to the jury. It was one obviously tried to the court. And there are cases that we've cited which suggest that, in fact, you don't have the burden to request nominal damages since your right to them is clear once you've shown a breach of contract. If we agree with you that nominal damages should have been awarded, I assume we would remand the case for the district court then to sort out who the prevailing party was for purposes of attorney's fees and costs. Correct. You would remand for that purpose, Your Honor. But under Delaware law, we think it's clear that an award of nominal damages would be sufficient to have us deem the prevailing party. When Delaware law is clear that it's liability, not damages, that actually determines who the prevailing party in the case is. Doesn't Delaware law require a holistic analysis? Because sometimes the plaintiff wins some, lose some, especially in a case like this where there were counterclaims, I think, weren't there? There were counterclaims, and we prevailed on those. That's right. It's an all or nothing analysis, Your Honor, so that the court awards all the fees to one side or all to the other in its discretion deciding what amount is appropriate. But Delaware law actually does not split the award of attorney's fees on a claim by claim basis. There's only one prevailing party. But if it's all or nothing, the Delaware law seems to require an evaluation of who wins on, quote, the main issue in the case. Would you agree with that? I agree with that. That's true. All right. And is it your position that we're in a better position to determine who that is rather than remanding in the district court to see who prevailed on the main issue in the case? No, no, that's true. The district court is in the best position to determine that. All I'm suggesting is that given the facts that the district court found, what is effectively a tie on the competing fraud claims, claims versus counterclaims. And should this court remand them with a finding of money judgment or nominal damages in favor of the plaintiffs, only one party will have succeeded in making a claim and winning money damages against the other. And based on that, it seems pretty clear who the prevailing party would be. And I'm not clear what basis the district court would have to find that some other entity was the prevailing party, that is, besides us. Why do you claim that your particular issue is the controlling issue in this case? Because you lost on some other issues. Yes. Both parties lost on the fraud issues, Your Honor, in that each side claimed that the other had defrauded it on the merger. But should we prevail on the holdback, we'll be the only one who prevailed on that particular aspect of the case, notwithstanding that, as Your Honor notes, it's not the only aspect of the case. Our view in this regard, Your Honor, would be that the fraud claims were essentially a tie, given that both parties sued and neither party recovered. Should you remand and award damages or nominal damages to plaintiffs, we'll be the only ones who have won on a claim against the other. I think I'm at my full 12 minutes, Your Honor. I'm happy to go on. I just have one other question, Mr. McNichols. In your brief, you seem to argue that what matters for purposes of forfeiture is whether an issue is raised. I think you say that you can forfeit issues, not arguments. And in support of that, you cite United States v. Polaris Galan, which is a Ninth Circuit opinion from 2004. Is that what your argument was? Did I correctly understand that? Yes, Your Honor, with one additional point, that whether you characterize our position here or characterize the rule as one of raising issues or arguments or claims, under either description or label, our ability to cite a piece of evidence is not forfeited by having failed to argue from it in closing. In other words, the preservation of a claim of error doesn't require you to cite every piece of evidence in support of your claim. All right. Well, that goes to the heart of my concern, because that argument in the Ninth Circuit opinion you cite seems directly contrary to our press. This is a criminal case and Spiraeus, which is a civil case. And my concern is very sort of rudimentary procedure, which is it seems that you're asking this court to sort of mine the record to rule in your favor on damages based on an argument that was just never presented to the district court. And it seems to be precisely the opposite of the way the system is supposed to work that we review. You're supposed to give the district judge the first crack at it, I guess, is what I'm saying. And it doesn't seem that you did that here. Why am I wrong on that? Well, the places we tried to address this, obviously, pointing out the areas in the closing argument by my colleague, where he noted both that 172 was the expert evidence of the value of the company at closing and that that value could be carried forward to the time of breach. Admittedly, Your Honor, we did not repeat that same argument in our post-closing briefing that we submitted, but it's in the record and was presented to the district court in response to his questions about what damages were. In other words, I disagree. But that 172 through Mr. Metcalf, that was tied directly to the fraud claim. And the judge was quite explicit about that. And that went back to the Daubert motion. Having found that information sufficiently reliable to be admitted, Your Honor, the district court's discretion, although broad, is not so broad as to be able to simply bypass that admittedly reliable, admitted into evidence, valuation evidence for any other purpose besides fraud. That was part of the record in this case. We argued from it. And having failed, the district court's not free to overlook it simply because he admitted it for a different purpose. All right, Judge Shariqa and Judge Greenberg, do you have any other questions at this time? No. All right, we'll hear you on rebuttal, Mr. McNichols. Let's hear from Ms. Sullivan. Good morning, Your Honors, and may it please the court. Kathleen Sullivan for Appley C-3. Your Honors, the only question before you is whether the district court clearly erred in his factual finding that the plaintiffs failed in their proof of any damages, monetary damages, on the contract claim. And that ruling by the district court was not clearly erroneous. District court made no legal error. And you should affirm. Now, we have four numbers on the table, the 333, the 172, the 44 cents, and the nominal damages. I'd like to take those each in turn and say why none of them can salvage the loss of plaintiffs in this case. To start with the 333, Judge Hardiman, as you said, the 333 was just a plug number. In fact, the majority of Judge Connolly's meticulous 53-page opinion is a rejection based on detailed credibility findings that the 333 plug number in the merger agreement was a representation of the per share value. That's his finding at A21, at A30, and at A52. A21, A30, A52, the judge says the 333 plug number was used as an input to get to the number of shares. It was never the valuation of the worth of the shares. It was a device for an exchange ratio. And the plaintiffs haven't appealed that factual finding on appeal, nor could they, because it was based on very detailed credibility findings that Mr. Siebel and Mr. Schmayer were credible, that Mr. Frank and Mr. Blatman were not credible, that Mr. Jensen was credible and bolstered by Goodwin, and Mr. Scaramellino was credible. It would be hopeless to try to overturn on appeal the factual finding that the 333 per share number was not a representation of the value of each share, but only a representation used to get to the number of shares that would be exchanged. Now, you don't have to take that from me, that that was the only, only number the plaintiffs advanced at trial. I would refer your honors respectfully to A340 to 341. At A340 to 341, and Mr. McNichol's colleagues closing at trial, this is where he expressly disavows in way of specific performance. So Judge Hardiman, they didn't ask for shares. They only asked for money. He said, we just want monetary damages. And in a very unusual colloquy with Judge Connolly, Judge Connolly says, what number should the damages be? And Mr. McNichol's colleagues said the number should be 333 per share, or if he says 4 million, that's just 333 per share by another name, because 4 million is just 333 per share, the plug number times the number of shares. And your honor, he expressly disavowed any other theory. So 333 is not a measure of value. That's a fact finding that's not clearly erroneous. And it was the only measure of damage advanced at trial. The other three numbers, Judge Sirica asked, what about 172 or 44 cents? Judge Greenberg asked for nominal damages. In the closing at A340 to 341, Mr. McNichol's colleague never says 172 as a valuation of the holdback shares for monetary damages on the holdback claim. He never says 44 cents, which I take Mr. McNichol's to have omitted from his argument. So I don't think it's being pressed here. And he never says nominal damages. Then if you look in the supplemental appendix at pages seven to nine, your honor, again, you'll see that the only measure of damages advanced below was the $3.33 plug number. 172 isn't there, 44 cents isn't there, and nominal damages isn't there. Now, Judge Hardiman, the law of this circuit is exactly as you say, and whatever the Ninth Circuit says, it doesn't apply here. We cite in our brief the United States against Dupree case, the Zimmerman case. In this circuit, it's absolutely the case that the plaintiff is bound by his forfeiture of arguments as well as claims. And the reason, as Judge Hardiman, as you just recapped for us, is you don't want the district judge to be sandbagged by having arguments made after the trial that were never made at trial. And Dupree and Zimmerman expressly used the term argument, not just claim. So the law here is the 172, the 44 cents, and the nominal damages were forfeited here. And your honor, this is a for sure for a damages calculation. I'd like to commend to your honor's attention the Edwards against Wyatt case that lasted so long it came before two members of this panel over multiple appeals. And in Edwards versus Wyatt, this court's decision in 2009, the opinion of the court notes expressly in footnote three that you can advance a new damages calculation in your brief that wasn't advanced before the district court at trial. So with respect, your honor, the easy way to affirm here is the 333, the rejection of $3.33 as a measure of value of the holdback shares was found, was rejected by the district court on factual grounds that are not subject to any clear error reversal here. And the 172, the 44 cents, and the nominal damages were waived. You know the old proverbial saying that the district judge is not supposed to be like a truffle pig hunting for troubles, rooting around in the words of this court's decision and Zimmerman, rooting around in the record saying, well, maybe we could look at 172, maybe we could look at 44 cents. But your honors, I'd add that even if the 172 and 44 cent numbers weren't forfeited by their failure to raise them at trial, they are very rotten truffles. Judge Sirica and Judge Hartman. Ms. Sullivan, there's not a lot of rooting required, though, to award nominal damages. That's the obverse, I think, of that argument. And we're looking at Delaware law here, and I can't find any cases under Delaware law where a party that prevailed on a breach of contract claim was not awarded nominal damages. Why should this be the first? Your honor, the Delaware law is that a court may award nominal damages if there's a failure of proof or an inability to prove compensatory damages. But the law of Delaware is not, not that the district court must. And in fact, the two cases that my friend on the other side cites in the brief, the LaPointe case from the Chancery Court and the standard districting case from the Superior Court, they were cases in which the courts of Delaware awarded nominal damages, but they both use the phrase may and not must. I think the most important thing, your honor, is that nominal damages exist in a circumstance where it's not possible to prove with reasonable certainty an actual amount of compensatory damages. This is not a case where it was not possible to prove the amount that the shares were worth when the breach occurred 18 months after the merger in October, November of 2013. This was just a case in which the plaintiffs made a set of tactical and strategic choices at trial not to prove that amount. They didn't call Metcalf on the contract damages. They called him on the fraud damages. They tried to change the Metcalf testimony at the last minute to a theory of contract damages on the upfront contract claims, but they never tried to change it to a theory of valuation for the holdback claim breach 18 months later. They never put in any expert testimony contemporaneous with the breach at all, your honor. And so this is not a case where they couldn't have proved compensatory damages. This is a case where they didn't. And your honor, it's especially inappropriate. Yeah, let me let me just challenge you on that, though, because what about Norman v. Elkin? That's an opinion from this court just in 2017. In that case, we awarded nominal damages, even where the plaintiff failed to provide the district court with any evidence establishing damages, right? And that was a case where we applied Delaware law. The cases you cited in your brief, like Alexander v. Riga and Cohen v. Resolution Trust, in the first one, Alexander, we were applying federal common law. Those are both cases that certainly go your way, support your position. The problem I see is the first one applied federal common law and Cohen applied Pennsylvania law and then Cooper Distribution Company versus a man of refrigeration applied New Jersey law. So you've got good support from three jurisdictions there, but here we're applying Delaware law and Norman v. Elkin seems to go contrary. What's your response? All correct, your honor, and we love Pennsylvania law. We recognize it doesn't apply here. But your honor, Norman v. Elkin doesn't help plaintiffs because remember, the key thing is Norman v. Elkin comes up from a jury trial. And the jury found nominal damages and the district court vacated the jury's finding of nominal damages. And this court reversed the district court's vacator of a jury finding of nominal damages. That raises Seventh Amendment issues that aren't present here. So I would submit that plaintiffs have no case, including Norman, that ever said that a plaintiff gets nominal damages awarded on appeal, where they waived it entirely below, they forfeit it below. And your honor, you know, my friend on the other side cites cases like Alla and Bastista. Those were 1983 cases involving constitutional claims where the injury is essentially conclusive proof of damage. This is a Delaware contract case. Damages are an independent issue on which, as you said earlier, the plaintiffs bear the burden. They failed to meet the burden here. And there's no case that is cited anywhere in the briefs in which Delaware law was found to require an appellate court to award nominal damages, where the party seeking the damages never, ever mentioned nominal damages below. Not in their prayer for relief, not in their post-trial brief. Look at Supplemental Appendix, pages 7 through 9, Supplemental Appendix. Their proposed findings of fact and conclusions of law omit any mention of nominal damages. But most important, your honor, look at A340 to 341. That's where Mr. McNichol's colleague is given point blank the question, what damages do you want me to award? And he said $3.33. He didn't take that opportunity to make the fallback arguments of 172.44 or nominal damages. Your honor, this is not a pro se litigant in a First Amendment case like Allah, where you say, well, you didn't have to ask for nominal damages. This is well-counseled, sophisticated corporate clients under Delaware law. If this isn't a case where they should have asked for nominal damages as a fallback when point blank asked by the district court, it's hard to know what case would be won. Let me ask you this question. Suppose they had asked for nominal damages. It's not the kind of thing that's subject to proofs that, well, no, there won't be nominal damages because it's sort of a matter of law rather than a matter of proof of fact. And suppose they asked for nominal damages. What could you have said to oppose that? Your honor, if they had asked for nominal damages, we would be in a different situation here. The district court could have considered it. I know that, but that wasn't my question. My question is, they asked for nominal damages. What would you oppose that request for? On what basis? What would you have said? That they didn't have nominal damages? Well, correct, your honor. We would have said that Delaware law recognizes nominal damages as a fallback where it is impossible to prove with reasonable certainty the amount of actual damages. This is not such a case. This was a seven-day bench trial. Plaintiffs had ample opportunity to make any of the actual damages arguments. Remember, in their brief now, Mr. McNichols is trying, after the fact, to raise, how about 172? How about 44 cents? Although he appears to have dropped that oral argument today. If I understood this case correctly, if there was an award of nominal damages, that might have a consequence on attorney's fees and costs. So it's, in a sense, a little more than nominal. That's correct, your honor. And I would refer your honors to the Dunkin' Donuts case out of the District of New Jersey because that really reminds us what's going on here and why you should not allow an after-the-fact nominal damages award to be resurrected here. Dunkin' Donuts Judge Linares writing for the court said that a plaintiff should not be allowed to raise a newfound claim for nominal damages for the first time after the fact in an effort to avoid an adverse attorney's fee ruling. Here, an adverse ruling against the plaintiffs, and now Mr. McNichols is trying to say the attorney's fee should run the other way. This is exactly the case where you should hold plaintiffs to their strategic choices at trial. They could have asked for nominal damages at trial if they had their eye on attorney's fees, but they didn't. They put all their chips on $3.33. And now they're trying to say there are some other squares they wish they put their chips on. Judge Greenberg, the last place in which you should help salvage sophisticated corporate clients for their failure of proof, their waiver of an argument at trial, is where they didn't argue for nominal damages at trial, perhaps for opportunistic and tactical reasons because it was too low and they were going for a big number. They didn't raise it at trial. They raised it on appeal now for the first time, on appeal, and there's no Delaware case cited by Mr. McNichols, none, that allows an appellate court in a contract case to order the award of nominal damages where the sophisticated corporate counsel below didn't ask for it, none. There's no Delaware law to that effect. So, Your Honor, two reasons, Judge Greenberg, why you shouldn't award nominal damages here, even though I agree the district court could have awarded them if they asked. Number one, they forfeited, and they forfeited in an unusual circumstance where Judge Connolly at A340 to 341 gave Mr. McNichols' colleague the chance, give me your list, and his list had one number, $3.33. It didn't have the other numbers or the nominal damages. And number two, you should not reward the tactical behavior that says, well, I'm not going to make nominal damages, I'm not going to give the truffle to the judge on nominal damages at trial, but now I can resurrect it as a newfound claim after the fact to avoid an adverse attorney's fees ruling. That's not an appropriate use of this court to try to make up for a tactical choice made at trial, Judge Greenberg. So had they made the nominal damages claim at trial, we'd be in a different circumstance, but they didn't. And I think you should reject the ploy, as did the judge in Dunkin' Donuts, of trying to raise it now. The question, they lose on nominal damages, not because they may not have been entitled to them, but because procedurally they didn't ask for them. That's exactly correct, Your Honor. That's exactly correct. Remember, Delaware law allows a district court to award nominal damages, but it does not require it. And there's no case in Delaware law or in this court's precedence interpreting Delaware law to the contrary. So if we agree with you, there's no question about your being the prevailing party in this case. That's correct, Your Honor. I agree that with Judge Hardiman, the test is prevailing party. It's a predominance test. And the district court was plainly correct in awarding attorney's fees. It was plainly within his discretion. It was not an abuse of discretion for him to award attorney's fees to C-3 at the end of the case. But we would submit that even if, even if you were to send it back and say, well, maybe you should consider adding nominal damages, that would not change the prevailing party outcome. The prevailing party outcome is not that they get gotcha if they win on one claim. The prevailing party analysis under Delaware law, as Judge Hardiman said, is a holistic analysis. And this holdback claim, this holdback claim, remember there were three contract claims, fraud claims, crime fraud claims. This is the proverbial tail wagging the dog. Even if you were to give nominal damages on the contract, on the holdback contract claim, and we submit you shouldn't for all the reasons we've just discussed, that should not change the attorney fee outcome here because this was a case in which the holdback claim itself was a trivial portion of the trial in terms of time, in terms of evidence, and in terms of emphasis. This was a $68 million case that failed, making extremely sensational allegations against Mr. Siebel and his colleagues, which were rejected. Mr. Siebel was found to be entirely honest and forthcoming in this set of transactions. So to now allow a holdback claim on which plaintiffs utterly failed to meet any proof whatsoever of valuation of shares at any time, whether at the merger or in November of 2013 when this breach occurred, their failure proof should not be a basis for sending it back now for a do over on the attorney's fees. And, you know, the Aviz case is not to the contrary. I think that's, I suspect Mr. McNichols will raise that on his rebuttal. I just want to say in advance that that was a contract claim in which the Vice Chancellor did under Delaware law find that nominal damages was a basis for attorney's fees, but he expressly found there that the contract claim on which he awarded nominal damages was the crux of the case, the crux of the case. In other words, there the contract claim was the dog. Here it's the tail wagging the dog. So with respect, we think you should affirm easily unsettled forfeiture law in this circuit that extends even to the nominal damages claim, especially where the nominal damages argument is being made on appeal only for the opportunistic effort to correct an error because it affects their attorney's fees. But even if he's awarded nominal damages, this is not a case to send it back to flip the attorney's fees. And if you did send it back, of course, that would be a matter for the district judge to assess within his discretion on the holistic test. If there are no further questions from your honor, that's that's all from defendants. I'm happy to answer any further questions. I don't have any questions. I have none. Nor do I. All right. Thank you very much. Miss Sullivan. Let's hear Mr McNichols rebuttal. Thank you. Thank you, Your Honor. Just very briefly. I just like to start with the point that Miss Sullivan finished on quite at the end there about Mr Siebel having been found by the trial court to be entirely honest and forthright in his dealings with my clients. Without denying that the district court rejected our fraud claim, he came to essentially the opposite conclusion about Mr Siebel and his company with respect to the whole back, which is not simply the tail wagging the dog. This is a seven figure claim based on the district court's own observation. As he put in his findings, in fact, Mr Siebel contradicted his sworn testimony under oath at trial when trying to explain why these shares were withheld. This was essentially a claim for a 4.45 million indemnity, every dollar of which the district court reject every dollar as not supported by one single contemporaneous document. So all 1.2 million of those shares should have been paid out to my clients based on C3's bad faith as Mr Siebel tried to defend it at trial. That was the district court's point. I'm not sure there's any dispute on that, Mr McNichol. I think if I understood Miss Sullivan's argument, based on what you just recounted, Judge Connolly's finding to be, had your colleague asked for specific performance of the delivery of the shares, it would have been required. I think we all agree on that, right? But the harder question is not having made that argument, what do we do about it now? Understood. In that vein, let me try to address the 333 point, which I think is the subject of some confusion here. It is clear, as counsel asserts, that the court found that for purposes of the fraud claim, $3.33, the unit divisor, as it's called, was not a promise to us. And therefore, we could not sue for fraud or for contract if the shares they delivered to us were worth something less than that. That's true. We acknowledge that adverse finding. But when you construe a contract, and the merger agreement is a contract, you do not look only at one clause. And wholly separate and apart from the 333 unit divisor, you have the stated amount of $4 million for the holdback, equating to 1.2 million shares, an amount that C3 asked for and C3 came up with. Now, as I mentioned before, I don't know if I made it clear or not. If that amount was not $4 million, then C3 agreed to something that essentially was taken advantage of. I mean, that would have been a fool's bargain to ask to hold on to 1.2 million shares if, in fact, they were worth something less than $4 million. And we submit to the court that C3, as the parent entity with the best knowledge of its own revenues and its own business situation, had better knowledge than we did as to the value of those shares. And the fact that they agreed that 1.2 million shares would equal $4 million in indemnifiable expenses is sufficient proof, sufficient inferential proof, for this court to conclude that that was, in fact, the value of the shares. Now, to look at it differently, Your Honor, for every $3.33 that C3 paid out in indemnifiable expenditures, it would get to hold on to one share of the holdback shares. So if it paid out $6.66, it could hold on to two, all the way up to $4 million. Now, as a practical matter, it would not be making those payments to the E2O unit holders. It would be making them out to people coming in to fix problems that, in theory, we would have created. But that, as a matter of economics, that exchange of $3.33 in hard costs for one share of C3 is indistinguishable, as a matter of economics, from buying them directly from us at a rate of $3.33. And that's what C3 agreed to in its contract, an amount that it asked for. So I don't think it's fair to say, in other words, that in the context of the holdback claim, where you have a separate number agreed to specifically asked for by the defendant, by C3, and a number of shares corresponding to that, intended to offset actual hard dollar expenditures, that that $3.33 number is just a plug number, to use the phrase that came up earlier. It can't be unless that clause is meaningless. And as I say, you don't construe a contract line by line. You construe it as a whole, taking into account all the different terms. And to construe it as Ms. Sullivan suggests, where $3.33 is just a plug number, you can disregard the rest, ignores the actual language of the holdback clause that says $4 million equals 1.2 million shares. Unless there are further questions, I don't think I have more to add. I have nothing more. I have nothing. Nor do I. Thank you, Your Honor. Thank you very much, Mr. McNichols. Thank you, Ms. Sullivan, for the excellent briefing and argument. The court will take the matter under advisement.